FILED IN CHAMBERS
U.S.D.C. Rome

MAY 24 2007

JAMES N. HATTEN, Clerk
By: **Deputy Clerk**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LAURA BUTTS,

    Plaintiff,

v.

TYCO HEALTHCARE GROUP LP;
UNITED STATES SURGICAL, A
DIVISION OF TYCO HEALTHCARE
GROUP LP; JOHN DOES 1-3,

    Defendants.

CIVIL ACTION

NO. 1:06-CV-1377-RLV

O R D E R

This is a product liability case arising out of an elective gastric bypass surgery performed on the plaintiff at Emory University Hospital on May 5, 2003. During the surgery, a medical stapler allegedly malfunctioned. Pending before the court are twenty-two Motions to Compel by the plaintiff [Docs. No. 38-59]. Collectively, the plaintiff's motions seek an order directing the defendants to respond to interrogatories and produce documents in accordance with the plaintiff's discovery requests.[1]

---

[1]The plaintiff's redundant submissions in this regard are inappropriate and unhelpful. The two motions to compel answers to the plaintiff's interrogatories are directed at each defendant separately, but the first six pages of both documents are a near verbatim copy of each other and the arguments addressing each defendant's answers are substantively identical. Similarly, the plaintiff has submitted ten motions to compel production of documents directed at Tyco Healthcare and ten motions directed at United States Surgical. Each motion addresses the respective defendant's answer to a particular request (e.g., the First Motion to Compel [Doc. No. 40] addresses document request 1-3, while the

Taken as a whole, the plaintiff's motions present a single issue for this court: whether the interrogatories and requests for production sufficiently identify a product manufactured by the defendants so that the discovery sought is "reasonably calculated to lead to the discovery of admissible evidence" and is not overly burdensome. FED. R. CIV. P. 26. For the foregoing reasons, this court concludes that they do not; consequently, the plaintiff's motions are DENIED.

The defendants have objected to the plaintiff's discovery requests on the grounds that the plaintiff has failed to establish who manufactured the allegedly defective stapler and, even assuming that it was indeed the defendants who manufactured it, the plaintiff does not identify which of the defendants' products was used during her surgery. Specifically, the defendants assert that because the reference to a single "#25 EEA stapler" in the post-operative report does not identify any specific stapler, but could describe several different staplers manufactured by the defendants, responding to the plaintiff's interrogatories and requests for

---

Second Motion to Compel [Doc. No. 41] addresses document request 4-7.) However, each of the twenty motions to compel presents the exact same argument and uses identical language to assert that the defendants' responses are insufficient and evasive. In other words, the plaintiff makes the same arguments in twenty separate motions, but does so about the defendants' responses to different document requests. Such duplication, however, does not enhance persuasiveness.

production is unduly burdensome and would produce information on unrelated products.

The plaintiff asserts that to the extent any of the defendants' products are similar to the "#25 EEA stapler" described in the operative report, the defendants must produce information on all of them. Specifically, the plaintiff asserts that she is not required to specifically identify the allegedly defective product at this juncture and that information on any stapler manufactured by the defendants with similar functions, operations, designation, or nomenclature as the "#25 EEA stapler" is discoverable.

The sole factual basis for the action against the defendants, other than the plaintiff's physical complications subsequent to surgery, is the post-operative report by the physician who performed the plaintiff's gastric bypass surgery. That report notes the use and apparent malfunction of a "#25 EEA stapler," which "was married to the anvil and stapler was closed and fired." Further, the report states, "Attempts to remove the stapler failed. After multiple attempts it was necessary to resect the entire anastomosis with the stapler in place. . . . It was not clear why it had not released after firing." [Compl. Doc. No. 1, ¶13.] The malfunction of the stapler required the surgeon to create an even smaller gastric pouch, or stomach, than was originally intended,

3

causing injury to the plaintiff due to the extremely limited amount of food she can ingest and process.

However, the doctor's post-operative report does not identify the specific model of EEA (end-to-end anastomosis) stapler used or its manufacturer. Instead, the report simply refers to a "#25 EEA stapler." Accordingly, because the plaintiff's complaint uses that report as the basis for her claims against Tyco and United States Surgical, the defendants assert that two questions must be answered before discovery can proceed: (1) whether the defendants manufactured the stapler used in the plaintiff's surgery, and (2) if so, which of the defendants' staplers is the one referred to as the "#25 EEA stapler." Otherwise, according to the defendants, discovery of over a half-dozen potentially similar staplers is overly broad and unduly burdensome, especially considering the fact that only one type of EEA stapler was actually used.

Notably, the plaintiff offers no other evidence, such as her medical or billing records, to shed light on the first question. She has made no direct showing that Tyco Healthcare or United States Surgical manufactured the stapler used during her surgery. Rather, the plaintiff points to a contract between the defendants and Emory Hospitals that establishes United States Surgical as the exclusive provider of gastric bypass staplers. [Pl.'s Reply to

4

U.S. Surgical's and Tyco Healthcare Group's Opp'n to Pl.'s Mot. To Compel., Doc. No 69-2, Ex. A.]  Ostensibly, this contract shows that although it is unknown whether the defendants actually manufactured the stapler used in the plaintiff's surgery, it at least establishes a good faith basis to proceed with discovery against the defendants.  Without any direct evidence, this court concludes that while the plaintiff is on shaky ground in this regard, the existence of an exclusive contract with the defendants is persuasive circumstantial evidence sufficient to proceed with discovery against the defendants as the manufacturers of the allegedly defective stapler.

With respect to the next question of which of the defendants' staplers is the "#25 EEA stapler" referenced in the post-operative report, however, this court concludes that the plaintiff has not sufficiently identified the particular product in such a manner that does not place an undue burden on the defendants.

Without deciding the matter, this court notes that the plaintiff's interrogatories and requests for production appear to be generally reasonable.  However, the defendants correctly assert that the plaintiff's broad requests fail to establish a suitable starting point for discovery. As the plaintiff herself points out, "[t]he scope of allowable discovery is determined by the claims

(and defenses) raised in the case."  Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1368 n.37 (11th Cir. 1997).  In this case, the claims are based on the malfunction of one particular type of stapler.  Yet, the plaintiff seeks discovery on all of the defendants' staplers, apparently hoping that in time she may learn which one was used on her.  Without knowing which product was allegedly defective, though, any discovery is overly broad and burdensome as it would include within its sweep over a half dozen of the defendants' products.

For example, without recounting every request at issue in the twenty-two motions before the court, the court notes that the plaintiff's production requests seek all information since 1990 relative to personnel, subsidiaries, agents, or others "who are in possession of or may have obtained information or documents for or on behalf of you specifically relating to the personnel and entities involved in the development of #25 EEA stapler." [Pl.'s Mot. to Compel Resp. to Pl.'s First Set of Request for Production, Request No. 1 & 2, Doc. No. 40, 7, 12.]  Also by way of example, the plaintiff requests production of "all research and development materials; newspaper clippings and press releases; books; books of account; cancelled checks, invoices, bills and receipts; opinions, certificates; and writings of any kind . . . reflecting the

6

conditions and circumstances of the environment for the use of #25 EEA stapler." [Pl.'s Mot. to Compel, Request No. 4, Doc. No. 41, 3-4.]

Thus, it is clear that defining which of the defendants' many staplers used for gastric bypass surgery is the type referred to in the post-operative report as the "#25 EEA stapler" is necessary to properly limit the scope of this discovery. While it may be reasonable to expect the defendants to answer the production requests with respect to one of their products, discovery on all of the possibly relevant staplers that could be the "#25 EEA stapler" at issue would undoubtedly (and unnecessarily) prolong this case, raise the costs of litigation, and unduly broaden the scope of discovery.

Contrary to Rule 26, the plaintiff's discovery requests, without limiting the scope to one particular stapler, are not reasonably calculated to lead to the discovery of admissible evidence. Even if the plaintiff obtains all of the requested information on all of the defendants' staplers, none of it would be admissible without knowing which of the defendants' staplers was used in her surgery. The plaintiff attempts to circumvent this obstacle by having the defendants identify which of its products was used in her surgery. However, since the defendants clearly

7

were not involved in conducting the surgery or determining which product the surgeon used, they cannot be required to uncover information wholly within the domain of the hospital itself or the patient. The manufacturer of a product cannot be held solely responsible for ascertaining whether a third party used its product in a suit against it. Consequently, this court concludes that it is outside the scope of discovery to require production of information and documents that the defendants cannot be expected to have.

Therefore, while the plaintiff has sufficiently shown, for purposes of conducting discovery, that the defendants manufactured the stapler used in her surgery, she has not sufficiently narrowed the scope of discovery as to which of the defendants' staplers was used. Discovery into all of the products is too broad and unduly burdensome when it is clear that only one of the products can be the subject of the plaintiff's claims. It is the plaintiff's responsibility to investigate which particular stapler was used in her surgery or at the very least to show this court why she cannot ascertain that information. Thus far, the plaintiff has not done so. Consequently, the plaintiff's Motions to Compel are DENIED.

Also pending before this court is the defendants' Request for Oral Argument on Plaintiff's Motions to Compel [Doc. No. 68].

However, in light of this court's decision here, oral arguments are unnecessary and, therefore, the defendants' motion is DENIED.

Lastly, this court dismisses the three John Doe defendants named in the complaint. Because the Federal Rules of Civil Procedure do not provide for fictitious party pleading and because the plaintiff has not served a summons and a copy of the complaint on any John Doe defendant within 120 days after filing the complaint pursuant to Rule 4(m), John Does 1-3 are DISMISSED as parties defendant.

**CONCLUSION**

The plaintiff's twenty-two Motions to Compel [Docs. No. 38-59] are DENIED. The defendants' Request for Oral Argument is DENIED. John Does 1-3 are DISMISSED as parties defendant.

SO ORDERED, this ____ day of May, 2007.

ROBERT L. VINING, JR.
Senior United States District Judge